UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Hanad Ahmed Macow, | Case No. 16-cv-3408 (JRT/TNL) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION |
| Jefferson B. Sessions, III, U.S. Attorney General,[1] | |
| John F. Kelly, Secretary, Department of Homeland Security,[2] | |
| Jason Sieving, Field Office Director, St. Paul Field Office, U.S. Immigration & Customs Enforcement (ICE), and | |
| Warden of Carver County Jail, | |
| Respondents. | |

Hanad Ahmed Macow, A-Number 208-675-768, Carver County Jail, 606 East Fourth Street, Chaska, MN 55318 (*pro se* Petitioner); and

Ana H. Voss, Assistant United States Attorney, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415 (for Respondents Jefferson B. Sessions III, John F. Kelly, and Jason Sieving).

## I. INTRODUCTION

This matter is before the Court, United States Magistrate Judge Tony N. Leung, on Petitioner Hanad Ahmed Macow's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241. (Pet., ECF No. 1). This action has been referred to the undersigned

---

[1] Pursuant to Fed. R. Civ. P. 25(d), Jefferson B. Sessions, III, is substituted for Loretta Lynch.
[2] Pursuant to Fed. R. Civ. P. 25(d), John F. Kelly is substituted for Jeh Johnson.

magistrate judge for a report and recommendation to the Honorable John R. Tunheim, Chief United States District Judge for the District of Minnesota, under 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, this Court recommends that the petition be dismissed without prejudice.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Hanad Ahmed Macow is a native and citizen of Somalia. (Pet. ¶¶ 6, 11; Decl. of Xiong Lee ¶ 4, ECF No. 5; Lee Decl. Ex. 1, at 4, ECF No. 5-1).[3] On October 21, 2015, Petitioner attempted to enter the United States via the Brownsville, Texas port of entry. (Pet. ¶¶ 12, 14; Lee Decl. ¶ 4). Petitioner sought asylum in the United States as a result of his fear of returning to Somalia. (Lee Decl. Ex. 1, at 5; *see* Pet. ¶ 14; Lee Decl. ¶ 4). Petitioner provided the following narrative:

> [H]e is a citizen and national of Somalia and his purpose to enter the United States is so that he can seek asylum. [Petitioner] stated he left Somalia to travel to the United States because he was shot twice on the body by a group name[d] Al-Shabaab for not joining them in April of 2015. [Petitioner] stated he paid a smuggler in Somalia $18,000 US dollars to have him smuggled to the United States in which he obtained a fake passport from South Africa. [Petitioner] stated he departed Somalia on 05/25/2015 to travel to the United States. [Petitioner] claims he has no other residence and no other claim to citizenship besides Somalia. [Petitioner] stated he has fear of returning to his home country of Somalia.

(Lee Decl. Ex. 1, at 5). The Customs and Border Patrol Officer conducting the interview indicated Petitioner "is a suspect of fraudulently concealing a second nationality/identity to gain asylum." (Lee Decl. Ex. 1, at 5). Petitioner was immediately processed as an

---

[3] For all citations to Exhibit 1 to Lee's Declaration, (Lee Decl. Ex. 1, ECF No. 5-1), the Court uses the pagination of the Exhibit itself, rather than the ECF pagination of the document.

Expedited Removal and referred to an Asylum Officer. (Lee Decl. ¶ 4; Lee Decl. Ex. 1, at 6).

On December 7, 2015, an Asylum Officer found that Petitioner demonstrated a well-founded fear of persecution or torture. (Pet. ¶ 14; Lee Decl. ¶ 5; Lee Decl. Ex. 1, at 2). Petitioner was served with a Notice to Appear before an immigration judge, which charged removability pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (Lee Decl. ¶ 5; Lee Decl. Ex. 1, at 2–3). Under INA § 212(a)(7)(A)(i)(I), an immigrant "who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document" is inadmissible to the United States. 8 U.S.C. § 1182(a)(7)(A)(i)(I). On March 21, 2016, an Immigration Judge in Fort Snelling, Minnesota denied Petitioner's asylum application, denied Petitioner's application for withholding of removal, and ordered Petitioner's removed from the United States. (Pet. ¶ 11; Lee Decl. ¶ 6; Lee Decl. Ex. 1, at 7). Both parties waived their right to appeal the ruling. (Pet. ¶ 11; Lee Decl. ¶ 6; Lee Decl. Ex. 1, at 7).

Pursuant to the removal order, a Warrant of Removal/Deportation was issued on March 28, 2016. (Lee Decl. ¶ 7; Lee Decl. Ex. 1, at 19–20). On March 29, 2016, Immigration and Customs Enforcement ("ICE") officials uploaded an Electronic Travel Document request for Somalia. (Lee Decl. ¶ 9; Lee Decl. Ex. 1, at 24). On June 9, 2016,[4]

---

[4] The Government's response, (Gov't's Resp., at 2, ECF No. 4), and the first custody review following the removal order, (Lee Decl. Ex. 1, at 24, 27), both specified this date as June 9, 2016. In his declaration, Officer Xiong Lee specified this date as June 10, 2016. (Lee Decl. ¶ 10). This discrepancy, however, does not appear to be of significance.

3

a travel document packet was completed and sent to ICE Enforcement and Removal Operations headquarters in an effort to secure a Somali travel document (Lee Decl. ¶ 10; Lee Decl. Ex. 1, at 24, 27).

In a letter served on June 20, 2016, ICE informed Petitioner that, after conducting a 90-day post-removal custody review, Petitioner would continue to be detained. (Lee Decl. ¶ 11; Lee Decl. Ex. 1, at 21–31); *see* 8 C.F.R. § 241.4(k). This letter explained that the "Somali Government [had] recently been issuing travel documents," and therefore it appeared "there [was] a significant likelihood of removal in the reasonable foreseeable future." (Lee Decl. Ex. 1, at 30; *see* Lee Decl. ¶ 11). Given the likelihood of removal, ICE considered Petitioner to be a flight risk and maintained custody over him. (Lee Decl. Ex. 1, at 27, 30).

Upon further review of Petitioner's status, ICE served Petitioner with a similar letters on September 26, 2016 and October 18, 2016. (Lee Decl. ¶¶ 12, 14; Lee Decl. Ex. 1, at 32–35). In both of these letters, ICE determined that removal was reasonably foreseeable since "ICE [was] currently working with the government of Somalia to secure a travel document" and "[a] travel document . . . [was] expected . . . ." (Lee Decl. Ex. 1, at 32, 34; *see* Lee Decl. ¶¶ 12, 14).

On October 7, 2016, Petitioner filed his habeas petition, seeking "injunctive relief enjoining Respondent from further unlawful detention" and an "immediate[] release from custody." (Pet., at 13). The Petition alleged that Petitioner's continued detention constituted a violation of 8 U.S.C. § 1231(a)(6), as well as a violation of the Due Process Clause of the Fifth Amendment. (Pet. ¶¶ 22, 24–25, 27).

On November 23, 2016, Respondents filed their response and a declaration from an ICE Officer with relevant immigration documents. Respondents argue that Petitioner's continued detention is constitutional because ICE officials are attempting to secure a travel document and, therefore, removal is "substantially likely to occur in the reasonably foreseeable future." (Gov't's Resp., at 9, ECF No. 4). In support of this argument, Respondents note that ICE had successfully removed 19 individuals to Somalia in 2016, including one as recent as October 16, 2016. (Lee Decl. ¶ 16). Additionally, Respondents argue that Petitioner had not met his burden of proving that his detention was essentially indefinite and that his removal is not reasonably foreseeable. (Gov't's Resp., at 7–8).

On December 13, 2016, Petitioner submitted a reply. (Pet'r Reply, ECF No. 7). In his reply, Petitioner asserts that he has contacted the Somalia Embassy to request a travel document on numerous occasions to no avail. (Pet'r Reply, at 1). Petitioner also argues that the tense political atmosphere in Somalia, in addition to a bottleneck of Somali removals, makes his removal unlikely to occur in the reasonably foreseeable future. (Pet'r Reply, at 2–3, 6). Accordingly, Petitioner requests to be released from ICE custody, with supervision, until his removal can be effectuated. (Pet'r Reply, at 9, 11).

To date, ICE has not secured a travel document to Somalia for Petitioner's removal, (Gov't's Resp., at 3; Lee Decl. ¶ 15), and Petitioner remains in custody.

### III.   ANALYSIS

Petitioner filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging his continued detention by Respondents/ICE.[5] Petitioner alleges that his continued detention violates 8 U.S.C. § 1231(a)(6), as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001). Petitioner further alleges that his Fifth Amendment Due Process rights have been violated as a result of his continued custody and Respondents' failure to provide a neutral decision-maker to review his custody status. Petitioner requests that this Court enjoin Respondents from further unlawful detention and direct Respondents to release him from custody.

#### A.   *Zadvydas* Claims

Petitioner has been ordered removed from the United States. When an alien has been ordered removed from the United States, ICE is generally required to secure the alien's deportation within a 90-day "removal period." 8 U.S.C. § 1231(a)(1). During the removal period, ICE is required to "detain the alien." *Id.* at § 1231(a)(2). If the alien's removal is not effectuated during this period, ICE may continue to detain certain classes of individuals, including:

> An alien ordered removed [1] who is inadmissible . . . , [2] removable [as a result of violations of nonimmigrant status or conditions of entry, violations of criminal law, or reasons of national security,] or [3] who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal . . . ."

---

[5] For purposes of this Report and Recommendation, the Court will collectively refer to Respondents Sessions, Kelly, and Sieving under the umbrella of the Department of Homeland Security's Immigration and Customs Enforcement division ("ICE").

6

*Id.* at § 1231(a)(6); *see Bah v. Cangemi*, 489 F. Supp. 2d 905, 915 (D. Minn. 2007) ("The language of § 1231(a)(6) is permissive, not restrictive. Nowhere does the language limit the government's ability to detain aliens after the 90–day removal period has run.").

On its face, § 1231(a)(6) can be read to authorize "indefinite and potentially permanent" detention. *Zadvydas*, 533 U.S. at 689–90, 696. In *Zadvydas*, however, the Supreme Court construed § 1231(a)(6) to "limit[] an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" in order to comport with due process. 533 U.S. at 689–90. The Supreme Court held that if the alien's removal was not reasonably foreseeable, his continued detention was unreasonable and no longer lawful. *Id.* at 699–700. "The Supreme Court went on to hold that it is presumptively reasonable to keep an alien subject to a final removal order in custody for a total of six months." *Bah*, 489 F. Supp. 2d at 916 (citing *Zadvydas*, 533 U.S. at 701); *see Clark v. Martinez*, 543 U.S. 371 (2005) (applying the *Zadvydas* holding to inadmissible aliens). The Supreme Court explicitly stated that this presumption "does not mean that every alien not removed must be released after six months." *Zadvydas*, 533 U.S. at 701; *accord Bah v. Cangemi*, 548 F.3d 680, 685 (8th Cir. 2008). Rather, "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Ultimately, the Supreme Court held that "an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

7

Petitioner's removal period began on "[t]he date the order of removal bec[ame] administratively final." 8 U.S.C. § 1231(a)(1)(B)(i). In this case, the order of removal became administratively final on March 21, 2016, when Petitioner waived appeal. Petitioner filed his habeas petition on October 7, 2016. Accordingly, Petitioner has been detained beyond the six-month period required to file a *Zadvydas* claim. The mere passage of time, however, is not alone sufficient to render post-removal detention improper. *See Chen v. Banieke*, Case No. 15-cv-2188 (DSD/BRT), 2015 WL 4919889, at *4 (D. Minn. Aug. 11, 2015). The *Zadvydas* Court made clear that the continued detention of removable aliens past the six-month presumptive period is not a per se violation. 533 U.S. at 701. Only when there is no significant likelihood that removal will occur in the reasonably foreseeable future does an alien's detention become unconstitutional. *Id.*

Petitioner essentially relies on three points to support the contention that his removal is not significantly likely in the foreseeable future. First, Petitioner emphasizes that Respondents have thus far failed to secure a Somali travel document. (Pet'r Reply, at 1–2). Without travel documents, Petitioner reasons, removal cannot be achieved in the reasonably foreseeable future. (Pet'r Reply, at 2).

It is true that "at some point in time the inability to procure travel documents may provide 'good reason' to believe that removal is unlikely to be carried out." *Joseph v. United States*, 127 Fed. Appx. 79, 82 (3d Cir. 2005) (per curiam). In these cases, it may be possible to infer "that documents will not issue at all . . . ." *Jaiteh v. Gonzales*, Case No. 07-cv-1727 (PJS/JJG), 2008 WL 2097592, at *3 (D. Minn. Apr. 28, 2008), *adopting*

8

*report and recommendation*, 2008 WL 2074163 (D. Minn. May 14, 2008). However, "delays encountered . . . by the government are not alone sufficient to trigger an inference that there is no significant likelihood of removal . . . ." *Ahmed v. Brott*, Case No. 14-cv-5000 (DSD/BRT), 2015 WL 1542131 at *4 (D. Minn. Mar. 17, 2015), *adopting report and recommendation*, 2015 WL 1542155 (D. Minn. Apr. 7, 2015). Put another way, the absence of travel documents, by itself, does not necessarily make removal unlikely.

During Petitioner's detention, ICE officials have been actively trying to secure a travel document. Furthermore, from the time Petitioner was ordered removed to the time Petitioner filed his Petition, ICE officials successfully removed nineteen Somalis. Additionally, as reported in another case, on January 24, 2017, ICE repatriated 90 Somali nationals via charter airline, 16 of which were from the St. Paul ICE Field Office. (ECF No. 9, at ¶ 4, *Mohamed v. U.S. Dep't of Homeland Security*, Case No. 16-cv-4027 (JNE/TNL)). Thus, "ICE has made diligent and reasonable efforts to obtain travel documents," and that Somalia "ordinarily accepts repatriation." *See Jaiteh v. Gonzales*, Case No. 07-cv-1727 (PJS/JJG), 2008 WL 2097592 at *2–3 (D. Minn. Apr. 28, 2008), *adopting report and recommendation*, 2008 WL 2074163 (D. Minn. May 14, 2008). Accordingly, this Court is not persuaded that Respondents' failure to secure a travel document, without more, renders Petitioner's removal unlikely in the reasonably foreseeable future.

Second, Petitioner alleges that his removal is not significantly likely to occur in the reasonably foreseeable future because there is a bottleneck in Somali removal applications. In support of this claim, Petitioner offers several affidavits of Somali

9

detainees waiting to be removed. (ECF No. 7-1, at 7–15). But, while delays for other Somali travel applications may indicate that the Somali government has been slow to provide these documents, these delays do not mandate the conclusion that *Petitioner's* removal is unlikely to occur in the reasonably foreseeable future. Petitioner also claims that ICE is only capable of removing three Somalis per month. Not only has Petitioner failed to support this assertion with evidence, but there is, in fact, evidence to the contrary. As noted above, ICE officials successfully removed nineteen Somalis in 2016, and ICE removed another 90 Somali nationals via charter airline in January 2017. These recent removals indicate that the Somali government is willing to repatriate Somali nationals.

Finally, Petitioner contends that the political climate in Somalia has led the Somali government to stop issuing travel documents, which essentially renders his removal impossible. Governmental delays in issuing travel documents, however, are not independently sufficient to show that removal is unlikely in the reasonably foreseeable future. *See Fahim v. Ashcroft*, 227 F.Supp.2d 1359, 1367 (N.D. Ga. 2002) ("[T]he reasonableness of detentions pending deportation cannot be divorced from the reality of bureaucratic delays that almost always attend such removals."). Furthermore, the January 24, 2017 removal of 90 Somalis shows that the Somali government has resumed its issuance of travel documents. Therefore, Petitioner's argument is unpersuasive.

As discussed in a recent case, a detainee can generally establish that there is no significant likelihood of removal in one of five circumstances:

> (1) where the detainee is stateless and no country will accept him; (2) where the detainee's country of origin refuses to issue a travel document; (3) where there is no repatriation agreement between the detainee's native country and the United States; (4) where political conditions in the country of origin render removal virtually impossible; and (5) where a foreign country's delay in issuing travel documents is so extraordinarily long that the delay itself warrants an inference that the documents will likely never issue.

*Ahmed*, 2015 WL 1542131 at *4 (citations omitted). In essence, a detainee must establish that "the government is either unwilling or, due to seemingly insurmountable barriers, incapable of executing [his] removal." *Id.* Petitioner does not fall within any of these categories, and there is no indication that ICE is unwilling or incapable of securing Petitioner's removal. Indeed, the recent removals indicate that ICE is both willing and capable of procuring Petitioner's removal in the reasonably foreseeable future. Although Petitioner need not show that removal is "impossible," *Zadvydas*, 533 U.S. at 702, he must still establish that there is no significant likelihood of removal in the reasonably foreseeable future. *Id.* at 701. Petitioner has not met this burden, and this Court cannot conclude that Petitioner's detention is unlawful.

### B.   Due Process Claims

Petitioner also contends that he has been denied an opportunity to demonstrate that he should not be detained, in violation of his due process rights. Petitioner alleges that "ICE does not make decisions concerning [Petitioner's] custody status [in a] neutral and in an impartial manner." (Pet. ¶ 27). Petitioner claims that his Fifth Amendment right to procedural due process has been violated based on the government's failure "to provide a neutral decision-maker to review [his] continued custody . . . ." (Pet. ¶ 27).

Although Petitioner is an alien, he is still afforded the protections of the Fifth Amendment. *See Zadvydas*, 533 U.S. at 693 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("[A]liens who have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law."); *Wong Wing v. United States*, 163 U.S. 228, 238 (1896). These protections apply equally to those subject to a final order of removal. *Reno v. Flores*, 507 U.S. 292, 306 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings.").

Given that ICE officials have, on three separate occasions, notified Petitioner that he was to remain in government custody, it is clear that Petitioner's custody status has been reviewed. Thus, it appears that Petitioner argues that the Fifth Amendment requires a neutral third party—not merely ICE officials—to review continually his detention status. This standard, however, is not required by the Constitution.

Petitioner is entitled "the opportunity to be heard at a meaningful time and in a meaningful manner." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007) (explaining procedural due process in the removal context). In the removal context, an alien is given due process "[w]hen immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations . . . ." *Moses v. Lynch*, Case No. 15-cv-4168 (PAM/JJK), 2016 WL

2636352, at *4 (D. Minn. Apr. 12, 2016), *adopting report and recommendation*, 2016 WL 2596020 (D. Minn. May 5, 2016). Thus, custody reviews need not be conducted by neutral third parties to comport with due process standards—compliance with the framework of the Code of Federal Regulations suffices. *See Mareya v. Mukasey,* Case No. 06–cv–4525 (RHK/RLE), 2007 WL 4373012, at *12 (D. Minn. Dec. 12, 2007).

Here, it does not appear that ICE officials failed to follow the custody-review regulations set forth in 8 C.F.R. § 241.4. Nor has Petitioner specified any such violations. ICE's decisions to continue detaining Petitioner were justified upon a finding that Petitioner's removal was significantly likely to occur in the reasonably foreseeable future, and upon a determination that Petitioner was a flight risk. (Lee Decl. Ex. 1, at 30–34). These reviews were firmly grounded in the Code of Federal Regulations. *See* 8 C.F.R. §§ 241.4(d)(1), (e)(6) (authorizing continued detention when an alien poses a significant risk of flight, if released). Indeed, ICE reviewed Petitioner's custody status three times in the span of five months. Without more, there is nothing in the record to suggest that Petitioner was not given the opportunity to be heard "in a meaningful manner," and Petitioner's claim fails. Accordingly, this Court cannot conclude that Petitioner's due process rights have been violated.

## IV.  RECOMMENDATION

This Court concludes that Petitioner has not met his burden of proof under *Zadvydas*. Petitioner has not established that there is no significant likelihood of his removal in the reasonably foreseeable future. Nor has he shown that his due process rights have been violated. Consequently, Petitioner is not entitled to the habeas relief that

13

he seeks. However, the length of time Petitioner has been detained cannot be considered inconsequential. Because "what counts as the 'reasonably foreseeable future'" diminishes "as the period of prior postremoval confinement grows," future circumstances may affect the reasonableness of Petitioner's continued detention. *Zadvydas,* 533 U.S. at 701. Accordingly, this Court recommends that Petitioner's habeas petition be denied without prejudice.

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that the Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2241, (ECF No. 1), be **DISMISSED WITHOUT PREJUDICE**.

Date:  April 4, 2017

*s/ Tony N. Leung*
Tony N. Leung
United States Magistrate Judge
District of Minnesota

*Macow v. Jefferson B. Sessions, et al.*
Case No. 16-cv-3408 (JRT/TNL)

## NOTICE

**Filings Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.